UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No. 1:23-CR-34-HAB |
| ) | |
| JONATHAN S. ROSE ) | |

**OPINION AND ORDER**

Defendant was indicted on seven counts: four counts of making a false statement on an ATF form in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2), and three counts of possession of a firearm by a "person who has been adjudicated as a mental defective or who has been committed to a mental institution" in violation of 18 U.S.C. § 922(g)(4). He now moves, under *New York State Rifle Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), to dismiss all counts, arguing that the statutes violation the Second Amendment to the Constitution. Because the Court finds that § 922(g)(4) is unconstitutional as applied to individuals like Defendant, who had been committed to a mental institution years or decades before their firearm possession, the Court will grant the motion as to Counts 5 though 7. The motion will be denied as to the remaining counts.

**I.  Factual Background**

When considering a motion to dismiss an indictment, a court assumes all facts in the indictment are true and must "view all facts in the light most favorable to the government." *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999). A court may also rely on the facts outlined in the criminal complaint and accompanying affidavit. *United States v. Jones*, 383 F. Supp. 3d 810, 814 (E.D. Ill. 2019). The facts in this opinion are taken from the detailed affidavit filed with the criminal complaint.

In September 2009, Defendant was involuntarily committed to a state mental health facility by a Noble County, Indiana, Superior Court Judge. The commitment was based on a finding that Defendant "was suffering from a psychiatric disorder, substance abuse of alcohol and narcotics, and deemed a dangerous person to himself and others." The commitment was extended in December 2009. Defendant was released from the commitment in January 2010.

In May 2022, Defendant tried to purchase a handgun from The 2nd Amendment, a federal firearms licensee in Kendallville, Indiana. Defendant completed the ATF 4473 form as part of the purchased and checked "No" when asked, "Have you ever been adjudicated as a mental defective OR have you ever been committed to a mental institution?" The purchase was denied following a NICS check based on §§ 922(g)(4) and (g)(1)[1].

Defendant appealed the denial to the FBI and provided copies of his expungement paperwork. In July 2022, the FBI responded and conceded that he was no longer a prohibited person under § 922(g)(1). The FBI stood by the denial based on § 922(g)(4).

Six weeks after receiving the FBI's appeal determination, Defendant wrote the Noble County Court stating, "I'm trying to purchase a firearm for hunting and personal protection, I was approved for a [sic] Indiana carry permit.[2] How can I get this removed so I can be able to purchase a firearm." A copy of the FBI's appeal determination was included in the letter.

Three days later, the Noble County Court, construing Defendant's letter as an expungement request, issued an order stating,

> The Court finds that this matter is a Mental Health (MH) matter and does not qualify for expungement under existing Indiana law. The Court further finds that Respondent successfully petitioned for expungement of certain criminal cases in 57D01-2203-XP-14, but the cause herein was not included in the expungement

---

[1] Defendant had three Indiana state felony convictions, for which he was sentenced in January 2013. Those felony convictions, along with a 2006 misdemeanor conviction, were expunged four days before his attempted firearms purchase in May 2022.
[2] Defendant received a lifetime personal protection permit from the State of Indiana in August 2022.

2

> request, nor was it eligible to be expunged. Respondent's request is hereby DENIED.

(ECF No. 1 at 6).

Defendant returned to The 2nd Amendment in October 2022 to buy a handgun. He again completed the ATF 4473 form, and again checked "No" when asked, "Have you ever been adjudicated as a mental defective OR have you ever been committed to a mental institution?" This time the NICS check returned no issue, and the firearm was transferred to Defendant.

In November 2022, Defendant went to Freedom Firearms, a federal firearms licensee in Fort Wayne, Indiana, attempting to buy a rifle. Defendant filled out the same AFT 4473 form, again denying that he had ever been adjudicated a mental defective or had been committed to a mental institution. Again, the NICS check was clean, and the rifle was transferred to Defendant.

Defendant returned to Freedom Firearms the next month to buy a handgun. He again completed the ATF 4473 form, again denying that he had ever been adjudicated a mental defective or had been committed to a mental institution. This time, the NICS check flagged the purchase as being in violation of § 922(g)(4) and the purchase was denied.[3]

## II. Legal Discussion

### A. Bruen *Analysis*

In *Bruen*, the Supreme Court announced a new test for judging the constitutionality of firearm regulations. The Supreme Court rejected the two-step analysis that had emerged following *District of Colombia v. Heller*, 554 U.S. 570 (2008), calling it "one step too many." *Bruen*, 142 S. Ct. at 2127. Instead, the Supreme Court announced the following standard for applying the Second Amendment:

---

[3] A later investigation determined that Defendant's birthday was incorrectly entered in the NICS database when referencing the mental health commitment. This, apparently, is why some purchases were flagged while others were allowed to go forward.

3

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Id*. at 2129–30 (quotations omitted).

**B.     *§ 922(g)(4)***

Section 922(g)(4) of Title 18 of the United States Code makes it "unlawful for any person . . . who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to . . . possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(4).

**1.     *Defendant is Among the "People" Protected by the Second Amendment***

The parties first dispute whether the Second Amendment's plain text covers Defendant's conduct—specifically, is Defendant one of the "people" whose right to bear arms is guaranteed under the Second Amendment. This is not a novel debate. At least three federal circuits analyzed this question pre-*Bruen*. While no consensus is apparent from the decisions, the Court sides with Defendant.

The Sixth Circuit directly addressed the Government's argument here in *Tyler v. Hillsdale Cty. Sheriff's Dept.*, 837 F.3d 678 (6th Cir. 2016). *Tyler* addressed a constitutional challenge to § 922(g)(4). The Sixth Circuit used an analysis like that from *Bruen*, deciding first whether the statute regulated conduct protected by the Second Amendment. There, as here, the Government relied on the Supreme Court's statements in *Heller* that prohibitions against firearms possession by felons and the mentally ill are "presumptively lawful." (*See id*. at 689; ECF No. 31 at 5). It argued that "the Supreme Court's statement in *Heller* that restrictions on gun ownership by the

mentally ill and felons are 'presumptively lawful' indicates that prohibiting these groups of individuals from possessing firearms does not implicate the Second Amendment." *Tyler*, 837 F.3d at 689. This argument is almost identical to the argument advanced here. (ECF No. 31 at 7) ("In short, the Second Amendment's text—and Supreme Court cases interpreting this text—demonstrates that it does not encompass possession of firearms by mental defectives and those who have been committed to a mental institution.").

The Sixth Circuit rejected this argument.

> In mapping *Heller*'s "presumptively lawful" language onto the two-step inquiry, it is difficult to discern whether prohibitions on felons and the mentally ill are presumptively lawful because they do not burden persons within the ambit of the Second Amendment as historically understood, or whether the regulations presumptively satisfy some form of heightened means-end scrutiny. Ultimately, the latter understanding is the better option. The *Heller* Court expressly declined to expound upon the historical justifications for bans on firearm possession by felons and the mentally ill. In the face of what is at best ambiguous historical support, it would be peculiar to conclude that § 922(g)(4) does not burden conduct within the ambit of the Second Amendment as historically understood based on nothing more than *Heller*'s observation that such a regulation is "presumptively lawful."

*Id.* at 690.

The Ninth Circuit addressed the same issue in *Mai v. United States*, 952 F.3d 1106 (9th Cir. 2020). Faced with a constitutional challenge to § 922(g)(4), the court first addressed whether § 922(g)(4) "burdens conduct protected by the Second Amendment." *Id.* at 1114. And, again, the Government noted *Heller*'s observation that laws prohibiting firearm possession by the mentally ill are "presumptively lawful." The Ninth Circuit ultimately punted, assuming, "without deciding, that § 922(g)(4), as applied to Plaintiff, burdens Second Amendment rights." *Id.* at 1115.

The contrary conclusion was reached by the Third Circuit in *Beers v. Attorney Gen. U.S.*, 927 F.3d 150 (3rd Cir. 2019), a decision later vacated and remanded with instructions to dismiss as moot by the Supreme Court. *Beers v. Barr*, 140 S. Ct. 2758 (Mem) (2020). There, as here, the

Government relied on historical laws permitting "lunatics" to be "locked-up." (*Id*. at 157). Based on those laws, and Third Circuit precedent holding that "neither passage of time nor evidence of rehabilitation can restore Second Amendment rights that were forfeited," *Binderup v. Attorney Gen. United States of Am.*, 836 F.3d 336, 349 (3rd Cir. 2016), the court concluded that the Second Amendment did not apply to individuals who had been adjudged to be a danger to themselves or others. *Id*. at 157.

The Court concludes that the Sixth Circuit's rationale is the most convincing. First, the Seventh Circuit, in its pre-*Bruen* jurisprudence, gave a broad reading to the Second Amendment's protections. In *United States v. Meza-Rodriguez*, 798 F.3d 664 (7th Cir. 21015), the Seventh Circuit held that unauthorized, non-U.S. citizens were within the "people" protected by the Second Amendment. *Id*. at 669-72. Reasoning that "people" must be given the same definition when used throughout the Bill of Rights, the Seventh Circuit relied on Fourth Amendment cases to hold that a person need only have "developed substantial connections with this country" to enjoy Constitutional protections. *Id*. at 672 (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990)). In so holding, the court rejected the Government's argument that the defendant's criminal past exempted him from Second Amendment protections, stating that the "Second Amendment is not limited to such on-again, off-again protection." *Id*. at 671.

The Court finds it likely that, when asked to apply the *Bruen* analysis, the Seventh Circuit would find that more is required than just a "substantial connection" to the country for a defendant to enjoy Second Amendment protections. But at the very least *Meza-Rodriguez* suggests that transitory personal characteristics do not forever exclude an individual from the class of "people" protected by the Constitution. Since Defendant's mental health issues fall into this category, the Court finds that he is one of the "people" under current circuit law.

6

The Court also concludes that *Tyler*'s rationale most closely resembles *Bruen*'s required analysis. *Tyler* attempts to determine whether the mentally ill fall within the ambit of the Second Amendment "as historically understood," that is, did the Framers believe that the Amendment protected the mentally ill. *Beers*, on the other hand, conflates the first and second parts of the *Bruen* framework, relying on historical laws to understand the Constitutional protection. That *Beers* also relies on *Binderup*, no longer good law in the Third Circuit, *see Range v. Attorney Gen. United States of Am.*, 69 F.4th 96 (3rd Cir. 2023), and was itself vacated by the Supreme Court, ends any suggestion that *Beers* accurately states the status of Second Amendment coverage.

But all this buries the lede. As noted above, the Government repeatedly relies on *Heller*'s observation that laws barring possession of firearms by "the mentally ill" are "presumptively lawful." *Heller*, 554 U.S. at 627 & n.26. The Court concedes that this language appears in *Heller*, and further concedes that, if § 922(g)(4) barred firearm possession by the mentally ill, the statute would be presumptively lawful—whatever that means post-*Bruen*. But there is no suggestion that Defendant is currently mentally ill, or that § 922(g)(4) applies to only those currently suffering from mental illness. To be sure, he *was* mentally ill, and the Court does not take lightly his involuntary commitment. If he is not currently mentally ill, though, *Heller*'s statement has little applicability to this case, and little applicability to § 922(g)(4)'s lifetime firearm prohibition against those previously committed. Even if "the mentally ill" fall outside the Second Amendment's protections, Defendant is not in that category of individuals, nor are the universe of once-mentally-ill-but-now-recovered people. Defendant is one of the "people" protected by the Second Amendment, so the Court must proceed to the second part of the *Bruen* analysis.

**2.**     *§ 922(g)(4) is Inconsistent with the Nation's Historical Tradition of Firearm Regulation*

This part of the *Bruen* analysis is surprisingly straightforward and favors Defendant. As *Tyler* notes, "one searches in vain through eighteen-century records to find *any* laws specifically excluding the mentally ill from firearms ownership." *Tyler*, 837 F.3d at 689 (quoting Carlton F.W. Larson, *Four Exceptions in Search of a Theory*: District of Columbia v. Heller *and Jud. Ipse Dixit*, 60 Hastings L.J. 1371, 1376 (2009)) (emphasis added). Indeed, the Government concedes that a review of history will show "no formal regulation prohibiting the possession of firearms by the mentally ill." (ECF No. 31 at 10).

In determining whether a regulation is "consistent with the Nation's historical tradition of firearm regulation," history is to be the Court's guide.

> For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional. And if some jurisdictions actually attempted to enact analogous regulations during this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality.

*Bruen*, 142 S. Ct. at 2131. Stated another way, the goal of the Government in these cases is to identify "historical analogies"; that is, historical American laws that look enough like the contested modern regulation. While the Supreme Court's description of a usable "historical analogy" is as clear as mud, a concession by the Government that it can point to "no formal regulation prohibiting possession of firearms by the mentally ill" is enough to show that there is no historical analogy to be found.

The Government attempts to save the statute by invoking laws "removing mentally ill individuals from the community through home confinement and involuntary commit[ment] to

8

welfare and penal institutions." (ECF No. 31 at 10). It points to one such law, enacted after the Second Amendment was adopted, from Connecticut. (*Id*. at 8). But even that law was limited—it applied only "during the continuance of such distraction or insanity." 1 Acts and Laws of the State of Connecticut, in American 236, para. 18 (1796). Neither the Government's chosen law, nor any other authority relied on by the Government, suggests that the nation has a historical tradition of imposing lifelong consequences for temporary mental illnesses.

The Court also finds relevant that Defendant was denied the ability to demonstrate mental fitness for firearm possession under Indiana law. As Defendant notes, the same law that codified § 922(g)(4) established a mechanism for individuals to petition the Attorney General to reinstate their firearms privileges. *See* 18 U.S.C. § 925(c). But Congress failed to fund that program and, in doing so, "could not have stated more clearly that the ATF is prohibited from acting on applications submitted by individuals pursuant to § 925(c)." *McHugh v. Rubin*, 220 F.3d 53, 58 (2d Cir. 2000).

Instead, Congress enacted a carrot-and-stick program under which it would provide public safety grants to states as long as they implemented programs to allow individuals prohibited under § 922(g)(4) to petition for the reinstatement of their rights. 34 U.S.C. § 40915. Indiana receives those grants[4], so it enacted Ind. Code § 33-23-15-2, which establishes a process for a person released from commitment to petition a court for reinstatement of his firearm rights. It was this statutory process Defendant tried to invoke when he wrote the Noble County court in August 2022. When the Noble County court erroneously viewed his letter as an expungement request, it effectively deprived him of the only process available for avoiding criminal liability under § 922(g)(4).

---

[4] https://bjs.ojp.gov/programs/nics-improvement-amendments-act/state-profiles (last visited Dec. 18, 2023).

This Opinion and Order says nothing about the constitutionality of § 922(g)(4) as applied to those currently under commitment orders, under a diagnosis of danger to themselves and others, or even those who have been denied reinstatement of their firearms rights by a court following completion of a statutory process. But for those like Defendant, whose mental health issues are more than a decade old and who have been denied the process for reinstatement, § 922(g)(4) is patently inconsistent with the nation's tradition of firearms regulation. The statute is unconstitutional as applied[5] to Defendant.

**C.   *§ 922(a)(6)***

Defendant also includes a two-paragraph argument challenging the constitutionality of § 922(a)(6) under *Bruen*. That statute makes it unlawful:

> for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

18 U.S.C. § 922(a)(6).

This argument is easily addressed. This statute does not implicate conduct protected by the Second Amendment because it prohibits making false statements, not possessing a firearm. This is the unanimous opinion of district courts throughout the nation. *See United States v. Valentine*, Case No. 2:20-CR-117, 2023 WL 2571720, at *7-8 (N.D. Ind. Mar. 20, 2023) (collecting cases). No further analysis under *Bruen* is necessary.

---

[5] The Court recognizes a general reluctance of district courts to consider as-applied challenges before trial. *See, e.g.*, *United States v. Sims*, No. 22-cr-30081, 2023 WL 6795977, at *2 (C.D. Ill. Oct. 13, 2023) (collecting cases). But here, the Court believes that it can address the as-applied challenge without a full trial on the merits because no facts surround the commission of the alleged offense that are unknown considering the criminal complaint and affidavit. Nor does the Court believe that the essential facts related to the as-applied challenge—Defendant's current mental health status—would be developed at trial.

**III.     Conclusion**

For these reasons, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss (ECF No. 28). Counts 5 through 7 of the indictment (ECF No. 12) are DISMISSED. The motion to dismiss is DENIED in all other respects.

SO ORDERED on December 20, 2023.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT
